UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re Ex Parte Application of CI INVESTMENTS INC., *et al.* for an order Pursuant to 28 U.S.C. § 1782. | Civ. Action No. 23-mc-434 (GHW) (GS)<br><br>[~~PROPOSED~~] STIPULATION AND PROTECTIVE ORDER |

WHEREAS, Applicants CI Investments Inc., Acting in its Capacity as Manager and Trustee for and on behalf of First Asset Morningstar International Value Index ETF; Lighthouse Investment Partners LLC; The Church of England Pensions Board, as Trustee of the Church Administrators Pension Fund; and Stichting Bedrijfstakpensioenfonds voor de Media PNO (together, "Applicants") and non-party subpoena recipients Deutsche Bank AG New York Branch ("DBNY") and Deutsche Bank Trust Company of the Americas ("DBTCA" and, together with DBNY, "Deutsche Bank") (collectively, the "Parties"), request that this Court issue a protective order pursuant to Federal Rule of Civil Procedure 26(c) to protect the confidentiality of certain nonpublic and confidential material that Deutsche Bank may need to disclose in connection with discovery in the above-captioned matter ("In re Ex Parte Application of CI Investments, Inc. *et al.*" or "the Action"); and

WHEREAS, the Parties, through counsel, agree to the following terms; and

WHEREAS, the Court finds that good cause exists for issuance of an appropriately tailored confidentiality order governing the production of materials for use by the Applicants in foreign litigation ("the Danish Actions"[1]) pursuant to subpoenas issued to Deutsche Bank under 28 U.S.C. § 1782 (the "§ 1782 subpoenas"),

IT IS HEREBY ORDERED that any person subject to this Stipulation and Protective Order ("Protective Order")—including without limitation the Parties to the Action, their representatives, agents, experts and consultants, all third parties providing discovery in this action, and all other interested persons with actual or constructive notice of this Protective Order—shall adhere to the following terms:

---

[1] The "Danish Actions" are the over 300 securities fraud claims filed by Applicants' counsel against Danske Bank in Denmark between March 2019 and February 2021, which include cases brought by the Applicants. The Danish Actions do not include any other claims filed against Danske Bank by claimants not represented by Applicants' counsel.

1

1.      Applicants may only use "Discovery Material" (*i.e.*, information of any kind produced or disclosed pursuant to the § 1782 subpoenas) that is designated as "Confidential" pursuant to the terms of this Protective Order for the sole purpose of litigating claims against defendant Danske Bank A/S in the Danish Actions.  Except as ordered by the Court, Discovery Material shall not be used or employed directly or indirectly for any other litigation, action, proceeding, or purpose whatsoever, in any jurisdiction.  For the avoidance of doubt, Applicants agree not to use Discovery Material, directly or indirectly, for the purpose of developing or litigating any claims whatsoever against Deutsche Bank or any of its affiliates in any jurisdiction.

2.      Applicants shall not disclose Discovery Material to non-parties to the Danish Actions, including intervenors in the Danish Actions, except as expressly permitted hereunder.  If Applicants are required by court order to disclose Discovery Material to non-parties to or intervenors in the Danish Actions, at least 10 business days prior to disclosure, Applicants must (i) notify any such non-party or intervenor to whom they intend to disclose Discovery Material of the non-party's or intervenor's obligations under this Protective Order and obtain the non-party or intervenor's agreement to be bound by this Protective Order by their executing a Non-Disclosure Agreement in the form annexed as an Exhibit hereto; and (ii) notify Deutsche Bank in writing of its intent to share such material and provide an account of the specific material that will be shared.  At the same time as disclosure, Applicants are required to provide Deutsche Bank with a copy of the material shared and identify to whom it was disclosed.

3.      Applicants may disclose Discovery Material to the other parties to the Danish Actions whom Applicants' counsel represents (the "Other Parties"), so long as, at least 10 business days prior to disclosure, Applicants (i) notify the Other Parties to whom they intend to disclose Discovery Material of the Other Parties' obligations under this Protective Order and obtain the Other Parties' agreement to be bound by this Protective Order by their executing a Non-Disclosure Agreement in the form annexed as an Exhibit hereto; and (ii) notify Deutsche Bank in writing of its intent to share such material.  Under no circumstances shall the foregoing be interpreted to permit disclosure of Discovery Material to non-parties to the Danish Actions or intervenors in the Danish Actions, except to the extent permitted by and subject to the conditions set forth in Section 2 of this Protective Order.

4.      Prior to using any such Discovery Material in the Danish Actions, Applicants shall, to the fullest extent permitted by applicable law, protect the confidentiality of any Discovery Material used in the Danish Actions.  The foregoing shall not be interpreted to restrict the Applicants from using Discovery Material in a public hearing or trial in Applicants' cases against Danske Bank A/S pending before the City Court of Copenhagen and the Eastern High Court of Denmark, or on appeal to the Danish Supreme Court, provided that Applicants protect the confidentiality of any Discovery Material used at such public hearing or trial to the fullest extent permitted by applicable law.

5.      With respect to the Confidential portion of any Discovery Material, Deutsche Bank or Deutsche Bank's counsel may designate such Discovery Material (or a portion thereof) as "Confidential" by stamping or otherwise clearly marking or designating as "Confidential" the protected portion in a manner that will not interfere with legibility or audibility.

6.      If at any time Deutsche Bank realizes that some portion(s) of Discovery Material that it previously had produced without limitation should be designated as Confidential, Deutsche Bank may so designate such material by so apprising all prior recipients in writing, and thereafter such designated portion(s) of the Discovery Material will be deemed to be and treated as Confidential under the terms of this Protective Order.

7.      No person subject to this Protective Order other than Deutsche Bank shall disclose any of the Discovery Material designated by the producing person as Confidential to any other person or entity whatsoever, including without limitation members of the press, formal or informal media, including social media, or other individuals and/or entities who may disseminate the Discovery Material publicly, except as specified in this section.  All persons listed in this section are bound by the terms of this Protective Order, and each Party must, at least 10 business days prior to disclosure, (i) notify any such persons to whom it intends to disclose Discovery Material of their obligations under this Protective Order, and confirm their agreement to be bound by this Protective Order by their executing a Non-Disclosure Agreement in the form annexed as an Exhibit hereto; and (ii) notify Deutsche Bank in writing of its intent to share such material:

(a)     the parties to the Danish Actions and their counsel, including in-house counsel, and any paralegal, clerical and other assistant employed by such counsel, subject to the conditions set forth in Section 3 above;

(b)     outside vendors or service providers (such as copy-service providers and document-management consultants, graphic production services or other litigation support services) that counsel for Applicants hire and assign to this matter, including computer service personnel performing duties in relation to a computerized litigation system, provided that, before any Discovery Material is made available to an outside vendor or service provider;

(c)     the defendant in the Danish Actions;

(d)     any witness who is called to testify at trial or deposition in the Danish Actions;

(e)     any person retained by Applicants' counsel as a consultant or expert to assist Applicants in the prosecution of the Danish Actions, to the extent deemed necessary by counsel;

(f)     stenographers engaged to transcribe depositions conducted in this action;

(g)     this Court, including any appellate court, and the court reporters and support personnel for the same; and

(h)     the City Court of Copenhagen, the Eastern High Court of Denmark, and any other appellate court, and court reporters and support personnel for the same, adjudicating the Danish Actions.

8.      If Applicants object to any designation of confidentiality, they may at any time serve upon counsel for Deutsche Bank a written notice stating with particularity the grounds of

3

the objection. If the Parties cannot reach agreement promptly, counsel for the Parties will address their dispute to this Court in accordance with Section II of Magistrate Judge Stein's Individual Practices in Civil Cases.

9. If Deutsche Bank requests additional limits on disclosure (such as "attorneys' eyes only" in extraordinary circumstances) it may at any time serve upon counsel for Applicants a written notice stating with particularity the grounds for the request. If the Parties cannot reach agreement promptly, counsel for the Parties will address their dispute to this Court in accordance with Section II of Magistrate Judge Stein's Individual Practices in Civil Cases.

10. If at any time Deutsche Bank realizes that some portion(s) of Discovery Material that it previously had produced contains information subject to the bank examination privilege, 12 U.S.C. § 1828, and/or Confidential Supervisory Information of any state, federal, or foreign regulator, including but not limited to information protected from disclosure by any applicable rule or regulation of the Board of Directors of the Federal Reserve System, the Office of the Comptroller of the Currency, the Federal Deposit Insurance Corporation, and the New York State Department of Financial Services, and any other applicable state, federal, or foreign authority; or is protected from disclosure by attorney-client privilege, work product protection, any other applicable legal privilege or protection, any protective order, non-disclosure agreement, law, regulation, rule, or policy, including any applicable U.S. or foreign data protection, data privacy, and/or bank secrecy laws, or regulatory rules; or that reveals the existence of, or discloses information that would reveal the existence of, a Suspicious Activity Report ("SAR"), Applicants shall immediately return such materials to Deutsche Bank and shall not use such materials for any purpose including without limitation in the Danish Actions.

11. Applicants may use Discovery Material solely for the purpose of litigating claims in the Danish Actions against Danske Bank A/S in Denmark, and specifically (and by way of example and not limitation) may not use, directly or indirectly, Discovery Material for any business, commercial or competitive purpose or for the purpose of litigating any claims whatsoever against Deutsche Bank or any of its affiliates in any jurisdiction.

12. All persons seeking to file redacted documents or documents under seal with the Court in connection with non-dispositive matters, or in cases where the Parties have consented to the jurisdiction of Magistrate Judge Stein for all purposes, shall follow Section I(H) of Magistrate Judge Stein's Individual Practices in Civil Cases as well as the applicable provisions of the Federal Rules of Civil Procedure and rules and standing orders of the U.S. District Court for the Southern District of New York. With respect to dispositive matters, the Individual Rules of the presiding District Judge shall be followed instead of Magistrate Judge Stein's Individual Practices. The Parties shall use their best efforts to minimize such sealing.

13. Any Party filing a motion or any other papers with the Court under seal shall also publicly file a redacted copy of the same, via the Court's Electronic Case Filing ("ECF") system, that redacts only the Discovery Material itself, and not text that in no material way reveals the Discovery Material.

14.     Each person who has access to Discovery Material that has been designated as Confidential shall take all due precautions to prevent the unauthorized or inadvertent disclosure of such material.

15.     Any Personally Identifying Information ("PII") (*e.g.*, social security numbers, financial account numbers, passwords, and information that may be used for identity theft) exchanged in discovery shall be maintained by the persons who receive such information and are bound by this Protective Order in a manner that is secure and confidential. In the event that the person receiving PII experiences a data breach, she, he or it immediately shall notify the producing person of the same and cooperate with the producing person to address and remedy the breach. Nothing herein shall preclude the producing person from asserting legal claims or constitute a waiver of legal rights or defenses in the event of litigation arising out of the receiving person's failure to appropriately protect PII from unauthorized disclosure.

16.     This Protective Order shall survive the termination of this application in the United States and the termination of Applicants' litigation in the Danish Actions. Within 30 days of the final disposition of the Danish Actions, all Discovery Material designated as "Confidential," and all copies thereof, shall be promptly returned to Deutsche Bank, or, upon permission of Deutsche Bank, destroyed.

17.     All persons subject to this Protective Order acknowledge that willful violation of this Protective Order could subject them to punishment for contempt of Court. This Court shall retain jurisdiction over all persons subject to this Protective Order to the extent necessary to enforce any obligations arising hereunder or to impose sanctions for any contempt thereof.

SO STIPULATED AND AGREED:

| Dated: April 14, 2024 | Dated: April 14, 2024 |
|---|---|
| _____ | _____ |
| Olav A. Haazen | |
| *Counsel for Applicants* | *Counsel for Respondents* |

SO ORDERED:

_____
GARY STEIN
United States Magistrate Judge

Dated:

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re Ex Parte Application of CI INVESTMENTS INC., ACTING IN ITS CAPACITY AS MANAGER AND TRUSTEE FOR AND ON BEHALF OF FIRST ASSET MORNINGSTAR INTERNATIONAL VALUE INDEX ETF; LIGHTHOUSE INVESTMENT PARTNERS LLC; THE CHURCH OF ENGLAND PENSIONS BOARD, AS TRUSTEE OF THE CHURCH ADMINISTRATORS PENSION FUND; and STITCHING BEDRIJFSTAKPERSIONFONDS VOOR DE MEDIA PNO for an order Pursuant to 28 U.S.C. § 1782. | Civ. Action No. 23-mc-434 (GHW) (GS)<br><br>[~~PROPOSED~~] NON-DISCLOSURE AGREEMENT |

I, _____, acknowledge that I have read, understand, and agree to abide by the Stipulation and Protective Order (the "Protective Order") in this action governing the non-disclosure of those portions of Discovery Material that have been designated as Confidential. I agree that I will not disclose such Discovery Material to any other person; that I will not use such Discovery Material other than for purposes specifically permitted in the Protective Order; and that at the conclusion of the litigation I will either return all discovery information to the party or attorney from whom I received it, or, upon permission of the producing party, destroy such discovery information. By acknowledging these obligations under the Protective Order, I understand that I am submitting myself to the jurisdiction of the United States District Court for the Southern District of New York for the purpose of any issue or dispute arising hereunder and that my willful violation of any term of the Protective Order could subject me to punishment for contempt of Court.

DATED: _____    _____